ADAIR *vs.* ADAIR.

---

### Edmund P. Adair vs. George E. Adair.

In defense to a bill in Chancery to foreclose a mortgage, purporting to be given to secure a certain sum of money which the mortgagor therein covenants to pay, he will not be permitted to show by parol that the mortgage was not in fact given to secure the payment of any sum of money, but as security for the performance of a parol agreement for the payment of certain debts of the mortgagee, and to aid in his support.

Where parties have deliberately and understandingly executed an instrument in writing, they can not afterwards be permitted, in any court, to insist that it does not express their real intentions, but that quite another thing was dssigned. It is *conclusively presumed* that their whole engagement, and the extent and manner of their undertaking, were reduced to writing; and no evidence is permitted tending to vary or contradict the terms of the contract, or to substitute a new or different contract for it.

It is no defense to a bill for foreclosure by the assignee of a mortgage, that the assignment to him was without consideration. The mortgagor has no interest in the question whether such assignment was for or without consideration, except as the want of it may enable him to make available any defense he might have had as against the mortgagee.

Presumption of payment can never arise from lapse of time alone, short of the period of limitation fixed by law.

*Heard May 22d. Decided June 8th.*

Appeal from Macomb Circuit in Chancery.

The bill was in the ordinary form, for the foreclosure of a mortgage dated February 9th, 1837, given by defendant to Samuel Adair, and purporting to be made to secure the payment of $650, in thirteen installments of $50 each; the first to be paid on the first day of April then next, and the remainder semi-annually, commencing on the first day of November then next, with interest. The mortgagor covenanted in the mortgage to make these payments.

The bill alleged that on the 19th day of May, 1837, Samuel Adair, by an instrument in writing set forth at large in said bill, transferred to complainant all his right, title, and interest in the mortgage, and authorized him to collect and endorse satisfaction of the same. The mortgage was acknowledged and recorded on the day of its date, but the assignment was not witnessed, acknowledged, or recorded. The bill claims the whole amount of the mortgage to be unpaid and owing to complainant.

Defendant answered, admitting the execution of the mortgage, but denying that he was at the time owing Samuel Adair anything. And he avers that the mortgage was executed as security for the performance by defendant of a parol agreement made with said Samuel to pay certain debts then outstanding against him, and to work for and assist said Samuel in supporting and maintaining himself and his wife (who were the parents of the parties to this suit), and that the mortgage was given for no other purpose, and on no other consideration.

He alleges that the assignment of the mortgage to complainant was without consideration, and in fraud of the cred-

itors of said Samuel, who is now deceased, and that it never in fact was delivered to complainant in the lifetime of said Samuel. And he claims that, at the time of such assignment, Samuel Adair was largely indebted to defendant; and also that afterwards, after the death of said Samuel, but before notice to defendant of such assignment, he paid debts contracted by Samuel Adair to a large amount; which indebtedness and payment he claims to have applied on the mortgage.

Replication to the answer having been filed, considerable evidence was introduced on the part of defendant, tending to show that he worked for his father a part of the time during the years 1835, '36, and '37 — in all about a year and a half; that in 1837, the father moved from Shelby, Macomb county, where the parties had resided, to the Grand River country, taking defendant with him, and that he stated to a witness that defendant was working for him on a contract to work for two years with his team for $300 a year, and when his time was up he should settle with him. Defendant also proved the payment by himself of a number of debts against Samuel Adair, before as well as after the death of the latter.

On the part of complainant, evidence was introduced tending to show, as was claimed, that Samuel Adair transferred to defendant his property, real and personal, in or about the year 1837. Among other evidence was that of Laura Lockwood, a sister of the parties, who testified as follows: "In 1836, Samuel Adair lived on his old farm in Shelby; he moved to Grand River country in 1837. I think George E. Adair had all his father's personal property in 1837 — I can not describe the property, but it was all his father had. There were cows, hogs; I can not tell what the team was — I have forgotten. Father told me he had given George all the property for his support. I think this was in the spring or early in the year 1837."

On the hearing in the Court below, the bill was dismissed with costs; and complainant appealed to this Court.

*Eldredge & Hubbard*, for complainant:

The assignment of the mortgage purports to be for a valuable consideration, and defendant can not impeach it.

Possession of the mortgage by complainant is *prima facie* evidence of its delivery at the time the assignment bears date, and in the absence of any proof to the contrary, is conclusive upon that point.— *Wall vs. Davis*, 6 *Pet.* 124; *Green vs. Yarnall*, 6 *Miss.* 326; *Dunn vs. Gaines*, 1 *McLean*, 321; *Hatch vs. Haskin*, 5 *Shep.* 391; *Cutts vs. York Man. Co.* 6 *Shep.* 190; *McConnell vs. Brown*, *Litt. Sel. Cas.* 459 Here there is no proof to rebut the presumption of delivery.

No one but the party, or those claiming under him, will be allowed to impeach a deed on the ground of fraud.— *Jackson vs. Eaton*, 20 *Johns.* 478.

The right to foreclose a mortgage is not barred by any statute or rule of the common law until the expiration of twenty years.

*H. Cartter* and *A. S. Robertson*, for defendant:

I. The demand has become stale. The lapse of time, taken in connection with the proofs, is sufficient to convince that the mortgage was either given solely under a family arrangement, or was *actually paid.*

1st. The time on which the first semi-annual payment became due was about eighteen years before the bill was filed.

2d. It does not appear during all that time that the defendant ever had actual notice of the existence of the assignment to the complainant by Samuel Adair, their father.

3d. The assignment was not acknowledged and was not recorded, so that there was no implied notice of its existence.

4th. The parties are brothers; had lived in the same village, as it appears, ever since the return of George, the defendant, from the Grand River country, in 1838.

5th. Further to show no suspicion of the existence of the assignment, or of any pretended claim on the mortgage, not

only no administration appears to have been had by any person on the estate of Samuel Adair, but the defendant, after the death of his father, continued to pay his debts.

6th. The view that the mortgage was given and intended to be security solely for the defendant's alleged contract with his father, is amply sustained by the testimony of Mrs. Laura Lockwood, one of the complainant's witnesses.

So that the lapse of time, and surrounding circumstances, are deemed to be amply sufficient to authorize the Court to hold the mortgage debt paid.—*King vs. King*, 1 *Stockton*, 44; *Gould vs. White*, 6 *Foster*, *N. H.* 178; *Daniel vs. Whitfield*, *Busbee Law* 291; *Diamond vs. Tobias*, 12 *Pa. S. R.* 312; *Bander vs. Snyder*, 5 *Barb.* 63; *Atkinson vs. Dance*, 9 *Yer.* 424; *Blake vs. Quash*, 3 *McC.* 340.

II. The defendant insists there is an ample proof of actual payment of more than the sum secured by the mortgage to the said Samuel, and for and in his behalf, and at his request, before any notice of the assignment was given to the defendant.

III. The whole proof sustains the statements of the answer, that, by an arrangement with Samuel Adair, the defendant took all his property to pay his debts, and to support him during his lifetime—which he did; and that, therefore, the mortgage was simply given as a security for his performance; that the assignment was not intended by Samuel Adair to be absolute; and that complainant in equity has no claim by virtue thereof.

MARTIN Ch. J.:

This is a bill to foreclose a mortgage given in January, 1837, by the defendant to one Samuel Adair, who was the father of these parties, and by the said Samuel assigned to this complainant in the month of May following. The mortgage purports to have been given to secure the payment of the sum of $650, in semi-annual installments of $50 each, with interest, and contains a covenant for the payment

thereof accordingly. To defeat this action the defendant insists in his answer, 1st, That the mortgage was not, in fact, given to secure the payment of $650, or of any sum of money, but as security for the execution of a certain parol agreement for the payment of certain debts outstanding against the said Samuel, and for aid in supporting him and his wife; 2d, That the assignment was without consideration, and fraudulent and void; and that it was never delivered to the said complainant by said Samuel; and, 3d, Set-off, to a large amount, which he claims should be applied in payment of the sum secured to be paid by said mortgage.

The execution and delivery of the mortgage are admitted; and we therefore proceed to the consideration of the defense.

The first proposition of the defendant is wholly unsustained by the evidence. The only testimony which is claimed, by the defendant's counsel, to bear directly on this point, is that of Laura Lockwood; but there is nothing in this, nor in the relation of the parties, or surrounding circumstances, which justifies the conclusion that the expressed contract of the mortgagor and mortgagee was not their real contract.

But, without wasting words on this subject, however strong the evidence might be, this defense would be of no avail. To hold that a party may reply to an action upon a written instrument,—"It is true I made the contract, but it was not my agreement, and I did not intend to be bound by it"— would set the law of contracts all afloat, render the certainty of the law a fiction, and place the obligations of parties beyond judicial control. It is true that, if there be fraud or mistake in the contract, equity will relieve, to annul or correct it, as the case may be: but it exercises this jurisdiction in cases of fraud upon grounds of public policy, as well as to relieve an injured party from injustice through the designs of another; and in those of mistake, upon the ground that the instrument is not made to speak the real intent of the parties. In both instances, however, clear and unequivocal proof is required to authorize the interference of the Court.

But where the parties have deliberately and understandingly executed an instrument—where one has not been defrauded, or both mistaken—they can not afterwards be permitted, in any court, to insist that it does not express their real intentions, but that quite another thing was designed. The true rule is: Where parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is *conclusively presumed* that their whole engagement, and the extent and manner of their undertaking, were reduced to writing; and no evidence is permitted tending to vary or contradict its terms, or to substitute a new or different contract for it. — 1 *Greenl. Ev.* § 275. Thus it was held in *Sutherland vs. Crane, Walk. Ch.* 523, that parol evidence can not be received, to add to, or vary, the terms of a written instrument. "It may" (said the Chancellor) "be introduced for the purpose of showing fraud or mistake in drawing the instrument, when the fraud or mistake is set forth in the bill, and the relief asked is based upon it; but not otherwise." This rule is forcibly illustrated by Mr. Spence in 1 *Eq. Juris.* 556. "It," he says, "excludes from the consideration of the Court every question but this—What is the meaning of the words which the parties used? The question is not broadly, What was the *intention* of the parties—what the meaning of the words indicate must be taken to have been the intention." And this rule is based upon sound policy, and is, with perhaps a single and doubtful exception, of universal application; and is the only one which can be safely followed, without destruction of a fundamental law of contracts underlying the entire business relations of society.

The second proposition of defendant's answer is, That the assignment is without consideration; that it was never delivered by Samuel Adair to complainant; and that it is fraudulent and void.

This proposition, like the first, might be disposed of with

the single remark that it is entirely unsustained by the proof. The defendant, however, seeks to have the Court draw this inference from the relations of the parties, and the form of the assignment. It is true that Samuel Adair was the father of both the complainant and the defendant; but this relation is not inconsistent with the presumption, much less the ascertained and acknowledged fact, that the one was his debtor, nor that the other might be the purchaser of his securities, or the object of his gratuitous bounty. Whether the assignment was for or without a consideration, is no matter of concern to this defendant, except for the single purpose of enabling him to make available his claim of set-off and payment; which we will presently consider. Its form furnishes no sufficient ground for the presumption that it was never delivered. No witnesses are necessary to render an assignment valid, nor is an acknowledgment and registry necessary; nor would a registry be constructive notice;—indeed, as a general rule, the transfer of the debt, or obligation, with the evidence of it, will operate to assign all collateral securities, without any instrument of writing whatever.

The assignment being then sufficient in this case to transfer the obligation and the security, and it being found in the possession of the complainant, no presumption can be raised against his title. The burthen of impeaching it was upon the defendant, and he has offered no proof relative thereto. Indeed, we are constrained from a consideration of all the proofs in the case; from the situation and the relations of the parties; from the facts shadowed forth in the evidence, if not fully established—that the father had transferred all his property, real and personal, to the defendant, and was about moving to a distant part of the State, and the defendant was to accompany him—to conclude that the assignment was made for the purpose of distribution of his property, if upon no valuable consideration; and that the defendant must have known it. The connection of the defendant with his father was of so intimate a character, that it forbids the pre-

sumption that any knowledge of their affairs was withheld from him; while there is nothing to show but that the parties were upon the most intimate and fraternal relations. And it is altogether inconsistent with these relations to presume ignorance on the part of the defendant of a fact so intimately concerning himself; or that the knowledge of it was suppressed by the complainant. But this is immaterial under the view we take of this case.

It is also claimed by the defendant that the period of time that has elapsed since the execution of the mortgage, taken in connection with the proofs, is sufficient to raise the presumption that it has been actually paid. It is suggested, also, that it raises the presumption that it was executed under a family arrangement; but we will consume no time upon this question, as such a presumption would avail nothing to the defendant, and could only serve to raise another presumption, viz., of knowledge on the part of defendant of everything connected with it.

But as to the presumption of payment, the whole defense is based upon the proposition that the mortgage does not express the real intention of the parties, and that the real contract has been fully executed. This is all that the defendant can mean by his claim of set-off and payment. Denying to him the right to insist upon his first proposition, his whole defense falls to the ground. Yet, assuming that he may still avail himself of the claim of payment, and establish it either by presumptions or proofs, the presumption of payment claimed to arise from "staleness of the demand" can hardly, upon any principle of equity or law, arise in this case. This species of presumption is one which courts will sometimes raise — in the absence of all direct evidence upon which their judgment is evoked — from lapse of time and surrounding circumstances. It is true that time has always been regarded as an auxiliary to other facts and circumstances in questions of payment; possessing more or less importance as the period may have been longer or shorter: but this presumption can

never arise, from lapse of time alone, short of the period fixed by law. — 9 *Yer.* 424; 12 *Pa. S. R.* 312; *Abbott vs. Godfroy's Heirs*, 1 *Mich.* 178.   In the present case, the defendant affirmatively insists upon payment, by way of set-off and otherwise (and we are aware of no rule allowing presumptions of this kind in support of a claim of set-off); and supports his claim by evidence bearing directly upon the question.   These facts and this presumption can not exist together; for the whole theory of presumptions arising from the staleness of the claim, is based upon the absence of proof bearing, in the one or the other way, directly upon the subject.   In this respect, this presumption is entirely different from that arising under the statute of limitations; as after that statute has run, the presumption becomes one of law; and is conclusive in courts of law, and generally in equity, notwithstanding the most positive proof of non-payment.

The remaining claim of the defendant is, that he has paid large amounts for Samuel Adair, which more than cover that claimed to be due, and that the same should be applied in discharge of this mortgage.   We do not think this claim can avail anything to the defendant.   By far the largest amount claimed to be due from the mortgagor to him, accrued (if at all) before the execution and delivery of the mortgage; and the residue after the assignment, and a portion of that after the mortgagee's death.   Now, giving full credit to the testimony of all the defendant's witnesses, it is yet impossible, upon any reasonable hypothesis, to conclude that the defendant would execute his covenant and mortgage for this sum of $650 and interest, payable in installments running through some seven years, before full payment, if, as is claimed, he had then worked for the mortgagee more than a year and a half, and was then laboring for him upon a contract for two years' labor at $300 per year.   Men do not do business in that way; and there is no reason shown in this case why this defendant should stultify himself by making so absurd a contract.   The uncertainty as to time and circumstance, and

the doubt which overhangs this portion of defendant's case, forbids the allowance of this claim; and the evidence is of no value except in so far as it tends to show a probable reason why the defendant should have performed the services, and discharged the liabilities, which he claims he has, and yet leave this covenant and mortgage valid and subsisting, in the hands of his father or this complainant; and further, to raise the not unreasonable presumption, that he knew it was intended by the mortgagee to pass to the complainant, for his share of the father's property, which he thus chose to distribute in his lifetime. It also tends to illustrate the payment, after Samuel Adair's decease, by the defendant, of his debts (for the latter had acquired all his property, both real and personal), and to repel the presumption that he has any equitable claim against the complainant, or would have against his father's estate, for re-payment thereof.

These reasons, and the general doubt and uncertainty which overhang the testimony of the witnesses, compel us also to reject the claim of payments, shown to have been made by the defendant after the assignment, as well as after the death of the mortgagee.

After a careful examination of the whole case, we can not discover either equity or probability in the defense; and the decree of the Court below must therefore be reversed, and one entered in favor of the complainant, with costs of this Court and of the Court below.

The other Justices concurred.

The following order was entered in the cause:

"The cause having been brought to this Court by appeal from the Circuit Court for the county of Macomb, and the same having been argued and submitted to the Court: It is ordered, adjudged, and decreed, That the decree of the Court below be reversed, and altogether held for naught. And it is further ordered, adjudged, and decreed, That the

complainant is entitled to have and receive of the defendant the whole amount secured to be paid by the mortgage mentioned in the bill of complaint in this cause, with interest thereon, and that this cause be remitted to the Court below, for further proceedings according to the rules and practice of said Court. And it is further ordered, That the said complainant recover his costs in this Court to be taxed, and that he have execution therefor."