ADOLPH F. BURWITZ ET AL. v. MICHAEL JEFFERS.

*Lease—Parol evidence—Partnership.*

Where the owner of a store building, with full knowledge that it is desired by a copartnership for the purposes of the firm business, and that it is their intention so to use it if procured, declines to lease it to the firm, but does lease it to one of the partners, and two of the three remaining partners become sureties for the payment of the rent and the performance by the lessee of the other covenants of the lease, an action for damages for the refusal of the lessor to deliver possession to the lessee will not lie in favor of the firm.

Error to Saginaw. (Wilber, J.) Argued November 22, 1894. Decided January 4, 1895.

*Assumpsit.* Both parties bring error. Reversed, and judgment entered for defendant. The facts are stated in the opinion.

*Humphrey & Grant,* for plaintiffs.

*James H. Davitt* (*Hanchett & Hanchett,* of counsel), for defendant.

GRANT, J. August 5, 1892, defendant, Jeffers, and plaintiff Burwitz executed a written lease by which Jeffers leased to Burwitz the store-rooms numbered 116 North Franklin street, in the city of Saginaw, for the term of one year, with the privilege of two, "to be occupied for a general store." The rent was $720 per annum, payable monthly. The lease contained the usual covenants for repair, and against assigning, transferring, or subletting without the written assent of Jeffers. Plaintiffs Strauss and Cooper became sureties for the payment of the rent and the faithful performance of the covenants, and the contract of suretyship was indorsed upon the lease, and signed by them. August 23 it was agreed that this lease should be surrendered and canceled, and that Jeffers should lease to Burwitz a store known as 206 Genesee avenue. The first lease was surrendered and canceled, and a new lease executed in its stead, which was like the first except as to the amount of the rent, which was to be $1,500 per year, payable monthly, and it did not specify for what purpose the store was to be used. Strauss and Cooper also executed a similar contract of suretyship. Sixty dollars for rent was indorsed upon this lease, but was the same which was paid and indorsed upon the first. September 15, Mr. Burwitz tendered the balance of the

103 MICH.— 33.

month's rent, and demanded possession, which was refused. Immediately thereafter the plaintiffs instituted this suit to recover damages for breach of the contract of leasing. The declaration sets forth the lease in full, alleges that it was drawn and executed for the use and benefit of all the plaintiffs, who were copartners under the firm name of Burwitz & Co., and that this fact was known to the defendant. The parol evidence establishes the fact that Mr. Jeffers was informed by some of the plaintiffs that they either had formed or were about to form a copartnership, and desired the store to carry on the cloak business, and that it was designed to use the store for that business. The circuit court held that the plaintiffs were entitled to maintain the suit, and directed a verdict for them. From this judgment the defendant appeals. The court excluded from the consideration of the jury certain elements of damage, from which ruling the plaintiffs appeal.

Was parol evidence permissible to vary the terms of the written contract? The lease was under seal, and it is contended in behalf of the defendant that in contracts under seal none but the parties to them can sue or be sued. It is unnecessary to determine this question, since we are of the opinion that the rights of the parties in this case are the same whether we regard it as a contract of specialty, or one not requiring a seal, and as, therefore, coming under those decisions which hold that the seal may be treated as surplusage.[1] This is not a case where an undisclosed principal is suing or being sued, nor of false representation or suppression of facts. The entire situation was known to the parties, and with full knowledge of all the facts they deliberately made the contract. In terms it binds only Burwitz and Jeffers as principals. It binds

---

[1] See *Blagborne v. Hunger*, 101 Mich. 375.

Strauss and Cooper as sureties, and does not bind Glick at all. It is now sought to change the contract of surety-ship into another and different contract, and to make one who was intentionally omitted a party to it. Could Jeffers hold Glick as a principal upon this lease, after he had expressly refused to make a lease with him? Mr. Jeffers had the right to make a lease with whom he pleased. If he had refused to make a lease with the plaintiffs, or either of them, and had said to them, "I will lease the store to A. B., and if he chooses to let you occupy it he may," and the lease were made to A. B., could Jeffers have sued the plaintiffs for the rent? Or could he have sued A. B. and plaintiffs jointly? To so hold would be to make a contract which the parties themselves did not make, and which one of them expressly refused to make. Jeffers chose to deal with Burwitz as an individual, and not with the firm to which he belonged. We are not concerned with his reasons for so doing. Mr. Burwitz chose to so deal with Jeffers, and his reasons for so doing are imma-terial. Courts cannot substitute another contract for the one they made, and force contract relations upon a party who had expressly refused to enter into them. *Adair v. Adair*, 5 Mich. 204; *Jones v. Phelps*, 5 Id. 218; *First National Bank v. Bennett*, 33 Id. 520; *Coots v. Farnsworth*, 61 Id. 497; *Jacobs v. Miller*, 50 Id. 119. We think these decisions control the present case. This holding is not in conflict with the many decisions involving the rights and liabilities of undisclosed principals.

This disposal of the case renders it unnecessary to dis-cuss the question of damages.

The judgment against the defendant must be reversed, and judgment entered for him, with the costs of both courts.

The other Justices concurred.