128   77
s138 662

# Sullivan v. Louisville & Nashville Railroad Co.

## *Action for Breach of a Contract.*

1. *Contract: member of partnership can contract individually.*
The fact that one is associated with another as partner does not, as respects third persons, restrict his right to contract individually, and so to contract as to exclude all others, even his co-partner, from participating in the rights arising under said contract.

2. *Same; same; case at bar.*—Where a railroad company enters into a contract with a certain named individual, by which it agrees to transport for him "and his assigns" timber and lumber over its railroads at a certain rate, and said contract defines the word "assigns" by stating that "the word assigns above used in connection with the party of the first part is hereby limited to his legal representatives in case of death; to his successors in the timber and lumber business,

in case of his retirement; and to any mill that he may build or purchase in case of his selling his interest therein," and the context of such contract shows that the railroad was dealing with such person for himself as an individual, and not as a partnership, such contract on the part of the railroad is with the other party to the contract as an individual, and after his death is limited to his executor or administrator, and no person can claim or assert an interest under it as surviving partner, although at the time of entering into said contract there was a partnership existing between said person and a third party, and said partnership was conducted under the name of the party who entered into the contract with the railroad.

3. *Estoppel; there must be certainty.*—Before estoppels can be raised there must be certainty to every intent, and the facts alleged to constitute them are not to be taken by argument or inferences from certain circumstances.

4. *Same; mutuality.*—Mutuality is an essential ingredient of an estoppel.

5. *Same; estoppel by acts of agents.*—It is not within the general scope of the authority of an agent of a corporation to alter, vary or enlarge a contract made by a corporation under its corporate seal; and, therefore, an act done or an admission made by the agent of a corporation, who had entered into a contract under its corporate seal, having reference to said contract, can not work an estoppel against the rights of said corporation arising under such contract, unless it is shown that said act or admission by said agent, in reference to the contract, was duly authorized by the corporation.

6. *Same; when not shown to exist.*—Where one addresses a communication to an agent of a corporation, describing himself in his representative capacity, if the agent in replying to such communication addresses him simply as an individual without regard to his representative capacity, such correspondence can not be construed into an admission by the agent of the special relation claimed by such person.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This was an action brought by the appellant, Martin H. Sullivan, "who sues as surviving partner of a partnership composed of said plaintiff and Daniel F. Sullivan, now deceased, doing business in the name of Daniel F. Sullivan," against the Louisville & Nashville Rail-

road Company. In the complaint the plaintiff "claims of the defendant $125,000 as damages for the breach of a contract under seal, entered into by and between said partnership doing business in the name of Daniel F. Sullivan and the said defendant, on, to-wit, the 27th day of February, 1880, in which contract said partnership is mentioned and described as party of the first part and said defendant as party of the second part." It was then averred in the complaint "that said partnership, to-wit, Daniel F. Sullivan, was the owner of all stock of the Pensacola Railroad Company of Florida and was owner of the Selma & Gulf Railroad Company and all the franchises thereof, of the State of Alabama, and for the consideration therein expressed, said partnership, to-wit, Daniel F. Sullivan, in and by said contract, contracted to sell to said defendant, the said Pensacola Railroad and the said Selma & Gulf Railroad, and as a part of the consideration for such sale it was stipulated as follows: 'Fourth. The party of the second part, and its assigns, hereby contracts, to transport timber, logs and lumber, for the party of the first part, and his assigns, at such times and in such quantities, not less than twenty car loads,—when shipped on main track,—as he, or they, may require, over the said Pensacola Railroad, Selma & Gulf Railroad and Mobile & Montgomery Railway, from and to any point on any of them, at the rate of one cent per ton per mile, rating five thousand feet of lumber or timber, board measure, for logs per car load. The word "assigns," above used in connection with the party of the first part is hereby limited to his legal representatives, in case of death; to his successors in the timber and lumber business, in case of his retirement, and to any mill that he may build or purchase, in case of his selling his interest therein. The provisions of this article (fourth), are to be embraced in contracts, to be severally and formally entered into, by each of said corporations, with the party of the first part and guaranteed by the party of the second part.' " It was then averred in the complaint that on November 13, 1880, the defendant, under its corporate seal, executed the guaranty mentioned in the fourth article of

the contract of February 27th, 1880, above quoted. This guaranty executed with the Louisville & Nashville Railroad Company was set forth in the complaint. It was then averred "that afterwards, to-wit, on May 24th, 1881, the said defendant and said partnership entered into a a further explanatory contract in writing, in substance as follows:    'For the purpose of adjusting to transportation the rate of freight, provided by the fourth article of the contract between D. F. Sullivan of the city of Pensacola, Florida, and the Louisville & Nashville Railroad Company, the following rules are adopted by said parties: First: That the charge for transporting timber and lumber shall be one cent per ton per mile, to be charged at the actual weight, if weighed by track scales, but if not so weighed, each car loaded shall be assumed to weigh ten tons, but no more.    Second: That the charge for transportation on logs shall be eight mills per ton per mile, to be charged at actual weight, if weighed, but if not weighed, a car load may be assumed to weigh ten tons, but no more.    Third: These rules are to be applied to all timber, lumber and logs shipped since the 20th April, 1881, as well as all future shipments.    Fourth: This writing is not to be deemed a change or modification of the provisions of the fourth article of the said contract, but only as establishing rules for the execution thereof, founded upon a construction thereof, to which the parties have agreed.' "    The complaint then continues as follows:

"The plaintiff avers that at the time of entering into said contract, to-wit, 27th of February, 1880, the said partnership owned and controlled various tracts and parcels of timbered land aggregating a large quantity, to-wit, 250,000 acres lying adjacent or contiguous to said three railroads, viz., the Pensacola Railroad, Selma & Gulf Railroad and the Mobile & Montgomery Railway, and said partnership continued to control said lands and was engaged in the business of procuring lumber and timber from logs cut on said land and so continued to own and control said lands and conduct said business until the dissolution of said partnership by the death of said Daniel F. Sullivan, on, to-wit, June 11th, 1884, and, after the death of said Daniel F. Sullivan, the

plaintiff, as surviving partner of said partnership, continued to own and control said lands and to conduct said business as surviving partner.

"And plaintiff avers that prior to the dissolution of said partnership by the death of said Daniel F. Sullivan, said defendant recognized the plaintiff as a member of said firm of Daniel F. Sullivan in the management and conduct of said business and in the execution of said business and in the execution of said contract; and, that after the death of said Daniel F. Sullivan, said defendant recognized the rights and authority of plaintiff as surviving partner of said partnership, and continued the execution of said contract with plaintiff as such surviving partner, and plaintiff avers that in and by said contract the said defendant undertook and agreed to transport timber, logs and lumber delivered to it for transportation from any point on the said Pensacola Railroad, Selma & Gulf Railroad and Mobile & Montgomery Railway, to any point on any of them at the rate of one cent per ton per mile for timber and lumber, and eight mills per ton per mile for logs estimating a car load when not weighed at ten tons, without any other charge for such transportation, or for receiving or delivering such timber, logs and lumber so transported."

The breaches complained of were then averred in the complaint, which were that the defendant had violated the several contracts as set forth in the complaint, in that it had made charges for the transportation of timber and lumber contrary to the stipulations of said contract; that it had charged switchage; that when the lumber or timber was to be hauled for a distance less than twenty miles, the defendant had charged as for twenty miles, and in various other ways had breached the contract; each of the breaches complained of being specified by separate allegations.

The defendant pleaded the general issue and a special plea, the substance of which is stated in the opinion.

The contracts which are referred to in the complaint were proved and offered in evidence.

The following facts were shown upon the trial of the cause: Martin H. Sullivan was not present at the sign-

ing or delivery of either of said agreements, and the evidence does not show that any one informed the defendant directly that D. F. Sullivan was a partnership, and there is testimony tending to show that Daniel F. Sullivan stated in a reply to a question as to who was interested in the railroads purchased, that no one but himself was interested.

Part of the money consideration for the purchase of the railroads by defendant was paid in February, 1880, and the balance, $570,297.75 in New York city, November 11th, 1880. Martin H. and D. F. Sullivan were both in New York at the time, but the evidence is silent as to whether Martin H. was present when the receipt was signed and the money paid. The receipt is signed "D. F. Sullivan," and is in full of all indebtedness "to me." The manner of dealing under the contract before the death of D. F. Sullivan was by written orders signed "D. F. Sullivan," and, in one instance, "M. H. Sullivan," and sent to the superintendent of the defendant, to deliver trains or cars, at a point designated, to be loaded with timber, logs or lumber. These orders were obeyed and the bills for the service rendered were made out at the contract rate to. "D. F. Sullivan," and paid. This continued until about March 1st, 1883, when the defendant insisted upon an extra charge of twenty-five cents, generally, but in some cases fifty cents, for shifting or switching cars, and insisted upon charging for a haul of twenty miles, whether the distance was that great or not. These extra charges were submitted to by "D. F. Sullivan" and paid under protest each time, but the defendant continued to charge and collect these extra charges. This continued until the death of Daniel F. Sullivan, on the 14th of June, 1884. On the 20th of June, 1884, the last will and testament of Daniel F. Sullivan, written by himself, was probated. By this will Daniel F. Sullivan spoke of all the property claimed by the partnership as his own, devising about one-half of it to Martin H. After the defendant commenced to demand said extra charges and to violate the contract in other respects, a suit in ejectment was commenced in the name of "D. F. Sullivan" against the defendant for the recovery of a part of the property conveyed to the

defendant under the contract of February 27th, 1880, upon the ground that the defendant having violated its contract, the property reverted to the grantor. After the death of Daniel F., Martin H., as executor of said Daniel F., was made a party plaintiff to said suit, together with the other executor and the heirs of Daniel F. Sullivan. This suit was subsequently dismissed.

The will of Daniel F. Sullivan was declared void November 6th, 1890, and Martin H. Sullivan ceased to be executor. It was also in evidence that the charter of one of the steamboats was taken out in the name of "D. F. Sullivan."

On June 27th, 1884, just fourteen days after the death of Daniel F. Sullivan, Martin H. Sullivan, signing himself "as surviving partner of D. F. Sulivan in liquidation," sent to the superintendent of defendant the same character of written order which had been in use in this business during the life time of Daniel F. Sullivan, directing said superintendent to send a train to a point designated in said order to haul timber. Similar orders, similarly signed, were sent to and received by said superintendent of defendant almost every day until about May 1st, 1893. They were each and all obeyed and the defendant continued to haul timber, logs and lumber upon the order of "M. H. Sullivan, as surviving partner of D. F. Sullivan in liquidation," up to about the 1st of May, 1893, at precisely the same rate mentioned in the contract of February 27th, 1880, with the addition of the same character of extra charges which had been made against "D. F. Sullivan," from and after March 1st, 1883, to the time of Daniel F. Sullivan's death. All bills were made out to "M. H. Sullivan," and were paid by him, the contract rate willingly and the extra charges each time under protest; and these payments over and above the contract rate amounted in the aggregate to about $60,000.

Between June, 1884, and April, 1891, there were many letters to officials of the defendant from "M. H. Sullivan, as surviving partner," etc., complaining of failure to furnish cars promptly when ordered, all of which were promptly replied to giving some excuse for the failure. These replies were from officials of defendant,

ranging from local agent to the general manager. There were many other letters from "M. H. Sullivan, as surviving partner," etc., to the superintendent protesting against the payment of said extra charges, in one of which he stated that said charges were not according to the "contract rate," and that he would pay said charges "though contrary to the agreement under which you are transporting" timber, etc., "for me."

The record shows that many letters passed between "M. H. Sullivan, as surviving partner," etc., and different officials of the defendant, who, however, always addressed him as "Mr. M. H. Sullivan," without other designation. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

There were verdict and judgment for the plaintiff, fixing his recovery at $84,019.63. Upon motion of the defendant for a new trial this verdict and judgment were set aside and a new trial granted. From the judgment granting a new trial the present appeal is prosecuted, and the plaintiff assigns as error the granting of the motion for a new trial.

WATTS, TROY & CAFFEY, J. J. SULLIVAN and R. H. CLARKE, for appellant.—The motion for a new trial in this case should not have been granted. When there is evidence on both sides, or some evidence to support the verdict, it should not be set aside, because it may not correspond with the opinion of the court as to the weight of the testimony or because it is against the mere preponderance of the evidence.—*Cobb v. Malone,* 92 Ala. 633; *Brennan v. Brown,* 5 Eng. (Ark.) 138; *Hall v. Page,* 4 Ga. 428; *Holland v. Howard,* 105 Ala. 545; 16 Am. & Eng. Ency. of Law, 503; *Wintery v. Judkins,* 106 Ala. 261.

Suppose after the making of the contract of February 27th, 1880, D. F. Sullivan had refused to carry it out. If "D. F. Sullivan" was a partnership, whether the defendant knew it or not, the defendant could have held both partners liable in a suit for its breach. One partner acts as the agent of the firm.—*Clark v. Taylor,* 68 Ala. 453. When he makes a contract within the scope of the business of the partnership, he is presumed to be acting with the authority and consent of

all the partners. When, therefore, Daniel F. Sullivan made this contract of February 27th, 1880, he acted for himself and for Martin H. Sullivan. If they had refused to carry out the contract, would the fact that the defendant did not know it was dealing with a partnership prevent a recovery against both partners, on proof that the "D. F. Sullivan" with which it contracted was a partnership composed of Daniel F. Sullivan and Martin H. Sullivan, and that the contract was made by one partner with the knowledge and consent of the other? What defense could Martin H. Sullivan have set up to such an action?—*Crosswell v. Lehman*, 54 Ala. 363; *Renfro v. Adams*, 62 Ala. 302.

It is clearly settled by all the decisions, State and Federal, that to abrogate a contract by any subsequent agreement, whether such subsequent agreement be by writing or in parol, material changes must be made in the original contract, and it must be shown that it was the intention of the parties to substitute the new for the old contract in whole or in part, or it must be shown that the law gives that effect to the acts of the parties. If certain provisions of the old contract are changed, and the other provisions not altered, the old contract remains to that extent in full force and this is especially true if the original is referred to in the new agreement and expressly upheld, except where changed, or where the new contract is made in pursuance of the terms of the original agreement.—*Ex parte Sullivan*, 106 Ala. 80; *Milsaps v. M. & P. Bank*, 13 So. Rep. 906; *Sullivan v. McMillan*, 8 So. Rep. 450; *Bank of Columbia v. Patterson*, 7 Cranch, 299; *Dermot v. Jones*, 23 How. 220; *Jacksonville v. Woodsworth*, 8 So. Rep. 117; *Hutchinson v. Cullom*, 12 Ala. 624.

When a contract is shown to have been made with A, the firm, instead of with A, the individual, the right of all the partners to the benefit of the contract and their liability thereunder are as well defined as though each partner's name was set out in the instrument. All the partners could be sued for a breach of it and all the partners could sue to enforce its performance by the other contracting party.—*Monroe v. Ezell*, 11 Ala. 603; *Desha v. Holland*, 12 Ala. 513; *Bank of St. Marys*

v. *John Powers,* 25 Ala. 623; *Huntsville v. Huntsville Gas Co.,* 70 Ala. 190; *Bell v. Reynolds & Lee,* 78 Ala. 517; *Hilliker v. Loop,* 26 Am. Dec. 286; *Edwards v. Dillon,* 147 Ill. 14; *Brooks v. Washington,* 56 Am. Dec. 142; *Bromby v. Elliott,* 75 Am. Dec. 182; *Richardson v. Farmer,* 88 Am. Dec. 129; *Goble v. Gale,* 41 Am. Dec. 219; *Weaver v. Tapscott,* 9 Leigh 424; Gow on Partnership, 121, 123, 127; Story on Partnership, 241; Lindley on Partnership, star pp. 275 and 276; *Taintor v. Prendergast,* 3 Hill (N. Y.) 72; *Hunter v. Giddings,* 97 Mass. 41; *Huntington v. Knox,* 7 Cush. 373; Bishop on Contracts, 360; George on Partnership, 363; Clark on Contracts, 743.

Although the law is well settled that the dormant partner is liable for the breach of a contract made with the ostensible partner, it is contended in this case, that if it was unknown to the defendant at the time of entering into the contract that M. H. Sullivan was a member of the firm of D. F. Sullivan with which defendant contracted, therefore M. H. Sullivan's right to have said contract enforced as surviving partner does not exist. We say the rule works both ways.—Lindley on Partnership *275; George on Partnership, 369; *Garrett v. Handley,* 4 B. & C. 664; *Alexander v. Barker,* 2 Cromp. & J. 133; *Hilliker v. Loop,* 26 Am. Dec. 286; *Skinner v. Stocks,* 4 B & Adl. 437; *Goble v. Gale,* 41 Am. Dec. 219.

In our own State in the case of *Monroe v. Ezell,* 11 Ala. 605, *Desha v. Holland,* 12 Ala. 513 and *Bank of St. Marys v. John Powers & Co.,* 25 Ala. 263, *Clark v. Taylor,* 68 Ala. 453, and *Bell v. Reynolds & Lee,* 78 Ala. 517, it is distinctly held that, although all the partners are not necessary, they are proper parties and have the right to sue on the contract made with one of them.

Again, if the property, for which the contract was part consideration, belonged to the firm, each partner has the right to sue to enforce it. On the principle that D. F. Sullivan acted as the agent of the partnership and its principal, the partnership has the right to sue.—*Monroe v. Ezell,* 11 Ala. 603; *Desha v. Holland,* 12 Ala. 513; *Clark v. Taylor,* 68 Ala. 453; *Bell v. Reynolds & Lee,* 78 Ala. 517; *Goble v. Bale,* 41 Am. Dec. 219; *Hilliker v.*

[Sullivan v. Louisville & Nashville Railroad Co.]

*Loop,* 26 Am. Dec. 286.   A principal *who is unknown,* and perhaps also one who is known, may avail himself of contracts the agent, having authority, enters into in his own name, subject to the rights and equities of the other contracting party to whom the fact that the agent is contracting for the principal is not disclosed.—*Bell v. Reynolds & Co.,* 79 Ala. 517; *Huntsville v. Huntsville Gas Light Co.,* 70 Ala. 190; Bishop on Contracts, 360; *Taintor v. Prendergrast,* 3 Hill (N. Y.) 72; *Huntington v. Knox,* 7 Cush. 373.

The defendant was estopped to deny the fact that the plaintiff was a partner of D. F. Sullivan, and further to deny his right to maintain the present suit as surviving partner.—*Clarke v. Taylor,* 68 Ala. 453; *Tennessee v. Kavanaugh,* 101 Ala. 11; *Glaze v. Blake,* 56 Ala. 386; *Lodge v. Weld,* 139 Mass. 504.

It is held in Clark on Contracts, p. 743, that if an agent makes a contract in his own name, but in reality for an undisclosed principal, the principal may sue upon it.   See also Bishop on Contracts, § 360; *City of Huntsville v. Huntsville Gas Co.,* 70 Ala. 190; *Clark v. Taylor,* 68 Ala. 453; *Bell v. Reynolds & Lee,* 78 Ala. 517; *Taintor v. Prendergrast,* 3 Hill, 72; *Hunter v. Giddings,* 97 Mass. 41.

THOS. G. JONES and W. A. GUNTER, *contra.*—Decisions granting a new trial will not be reversed unless the evidence plainly and palpably sustains the verdict. *Lee v. DeBardelben,* 102 Ala. 628; *Dillard v. Savage,* 98 Ala. 598; *White v. Blair,* 95 Ala. 147.   Nor will the court disturb an order refusing a new trial, unless it is clear that injustice has been done.—*Morris v. West,* 101 Ala. 534; *Cobb v. Malone,* 92 Ala. 631; *Nooe v. Garner,* 70 Ala. 443; *Kelly v. Eyster,* 102 Ala. 325; *Holland v. Howard,* 105 Ala. 528; *Bank of C. v. Eureka,* 108 Ala. 89; *Nelms v. Steiner,* 113 Ala. 562; *Tenn. C. I. & R. R. Co. v. Stephens,* 115 Ala. 461. If the preponderance of evidence is greatly against the verdict a new trial should be granted.—*Bir. E. Ry. v. Clay,* 108 Ala. 233; *Davis v. Miller,* 109 Ala. 600; *Birmingham National Bank v. Bradley,* 116 Ala. 149.   The

question on appeal from an order granting or
refusing a new trial is not exactly the same
question which was before the trial court, but whether
the trial court has abused the discretion reposed in it
in the order made.—16 Ency. of Law (1st ed.), 519,
683, 693, 694, and notes; 3 Am. Dig., Century Ed., §
3408; *McClung v. Silliman,* 6 Wheat. 598; *Hall v. Rock-
well,* 6 Pac. 927; *Stiles v. Lightfoot,* 26 Ala. 443; *Ev-
ans v. Gordon,* 8 Port. 142; *McCreary v. Jones,* 96 Ala.
592. And the court of appeals will reverse more read-
ily an order refusing, than one granting, a new trial.
16 Ency. of Law, 519-683, 693, 694. In deciding upon
the propriety of an order granting or refusing a new
trial, great weight is attached to the decision of the
trial judge, from his greater opportunity of seeing the
witnesses and their deportment, and the court is not
governed by the number of witnesses merely.—16 Ency.
of Law (1st ed.), 517-518; *Holloway v. Hooper,* 108 Ala.
647. The lower court cannot be required to state the
ground upon which a new trial is granted.—*Richardson
v. Bir. C. & M. Co.,* 116 Ala. 381; s. c., 22 So. Rep. 478.
In the lower court all the grounds for granting a new
trial should be embodied in the motion because the or-
der once made is *res judicata* of the whole question.—16
Ency. of Law (1st ed.), 632.

And though on appeal the court will confine its con-
sideration to the questions made below, yet it is its duty
to consider the whole record and all the grounds brought
forward, and the question for its decision is, whether
the lower court has erred in the order, on all the grounds.
16 Ency. of Law, 690, and authorities cited in note 2;
3 Am. Dig., Century Ed., § 3408. And though the court
assigns a wrong or bad reason for its order, there will
be no reversal if it may be sustained on any ground ap-
parent in the record.—3 Am. Dig., Century Ed., §§
3406, 3408 to 3424; 16 Ency. of Law, 697, note 4;
*Simar v. Canaday,* 53 N. Y. 298; *Allard v. Greasert,* 61
N. Y. 4; *People v. Supervisors,* 70 N. Y. 233; *Scott v.
Morgan,* 94 N. Y. 514; *Stiles v. Lightfoot,* 26 Ala. 443;
*McCreary v. Jones,* 96 Ala. 592

In no event could Martin H. Sullivan main-
tain this suit. Still, it was competent for the

parties to provide that, on the death of D. F. Sullivan (which, certainly, must be taken to refer to the demise of a *man*, and not any mere *figurative* extinction of a firm), the service should be limited to *"his"* (the man's) "legal representatives," and there can be no doubt that the "legal representatives" of a *man*, *qua homo*, would never under any contingency embrace Martin H. Sullivan *"as a surviving partner."*—*Griswold v. Sawyer*, 125 N. Y. 471; *Lodge v. Weld*, 139 Mass. 504; *Robinson v. Hurst*, 44 Am. St. Rep. 272.

The contracts were all in writing, and in terms, and, by presumption, they were between D. F. Sullivan, as a man, and the Louisville and Nashville Railroad. The court takes notice of the fact that Daniel F. Sullivan is *prima facie* the name of an individual—and when we show that an individual in fact made the contract, and when we find further that the party in contracting with him dealt with him and entered into personal covenants with him as an individual, limiting its liability and duties thereunder, in case of his death, to "his legal representatives," relying upon his statements that he alone was interested in the *res*, and show all this, too, without contradiction—there is an end of the case, even if the factum of the partnership was undisputed, and was known to the Louisville & Nashville Road. For it cannot be disputed that parties may make their contracts as they please.—*Bholen v. Cleveland*, 5 Pick. 176; *Marvin v. Buchanan*, 62 Barbour, 468; *Sweetland v. Porter*, 27 So. East Rep. 352; 1 Thompson on Corp., § 300; *State v. McGrath*, 75 Ala. 424; *Boston Ice Co. v. Potter*, 123 Mass. 28; *Schmaling v. Thomlinson*, 6 Taunt. 147.

TYSON, J.—This suit was brought by Martin H. Sullivan in the relation of surviving partner of a partnership alleged to have existed between himself and D. F. Sullivan, deceased. From the complaint it appears that on the 27th of February, 1880, the Louisville & Nashville Railroad Co. entered into a contract in writing with D. F. Sullivan by which it agreed to transport for him and his "assigns" timber and lumber over the Pensacola road, the Selma & Gulf Railroad and Mobile & Montgom-

ery Railroad from any point on any of them at the rate
of one cent per ton per mile, etc. This contract under-
takes to define the word "assigns" by stating "that the
word 'assigns' above used in connection with the party
of the first part (Sullivan) is hereby limited to his
legal representatives, in case of his death; to his suc-
cessors in the timber and lumber business in case of his
retirement and to any mill that he may build or pur-
chase in case of his selling his interest therein." It
was further provided that the provisions of article four
were to be embraced in contracts to be severally and for-
mally entered into by each of said corporations with
said D. F. Sullivan and guaranteed by the Louisville
& Nashville Railroad Company. Afterwards on the
13th day of November, 1880, the same parties entered
into another contract in which it was recited that where-
as by the fourth article of said first contract certain
things were agreed (which, including the definition of
the word "assigns" are again set out), and whereas the
Pensacola Railroad Company had entered into a con-
tract with said Sullivan in accordance with said fourth
article and had since conveyed said railroad to the
Louisville & Nashville Railroad Company subject
to said contract; and, whereas the Pensacola &
Selma Railroad Company as owners of the Sel-
ma & Gulf Railroad, and the Mobile & Mont-
gomery Railroad Company had also contracted
with Daniel F. Sullivan, as required by said fourth arti-
cle, it was thereupon agreed and guaranteed to and with
said Daniel F. Sullivan and his "assigns" that said Lou-
isville & Nashville Railroad Company and its "assigns"
would transport, or cause to be transported, timber,
logs and lumber for said Daniel F. Sullivan and his
assigns (limiting the word "assigns" as defined by the
fourth article of said contract of February 27th, 1880,)
"at such time, and in such quantities  *  *  *  as he
or they may require over the Pensacola Railroad, Selma
& Gulf Railroad and Mobile & Montgomery Railroad,"
etc. It is further alleged that on May 24, 1881, said
Daniel F. Sullivan and the defendant entered into still
another contract, the substance of which is stated and
which relates to rates of freight. It is also alleged
that there was a partnership existing between the plain-

tiff and Daniel F. Sullivan relative to the business in which they were engaged of procuring lumber and timber and of shipping the same as agreed, and that it continued until the death of said Daniel F. Sullivan on the 11th day of June, 1884, and that after his death, the plaintiff as a surviving partner continued to conduct the business; and that the defendant, prior to the death of said Daniel F., recognized the plaintiff as a member of the partnership and his right as such and has since his death, recognized him as surviving partner of the partnership "and had continued the execution of said contract with the plaintiff as such surviving partner." Many breaches of the contract are assigned,—some as having occurred in the life time of said Daniel F. Sullivan and others since his death.

Amongst other defenses a sworn plea was interposed denying that the defendant had ever made or authorized any one to make the contract sued upon with the partnership doing business under the name D. F. Sullivan, but that it made the contract sued on with D. F. Sullivan individually and personally and not otherwise, and the said D. F. Sullivan was dead and that the plaintiff had no right to maintain the suit. There was a trial of the issue presented by this plea in connection with an agreement of counsel that if there should be a verdict for plaintiff, an accounting should be had in respect to the damages, before referees. There was a verdict for the plaintiff upon the issue, followed by an accounting, upon which the court finally entered a judgment for the plaintiff. A motion for a new trial was made in which, on thirty-eight grounds, it was sought to set aside and vacate the judgment and verdict on the special plea, and in eight of which, alleged errors in respect to the rulings of the court or the report of the referees, were insisted upon. It was insisted in the first aspect, that the jury disregarded numerous charges relating to the evidence introduced on the trial of the special plea, and that the court had erred in respect of a number of charges. The charges given and which it was insisted the jury had disregarded related to every phase of the evidence and among those refused by the court was the general charge in favor of the defendant.

The court vacated the judgment and granted the motion for a new trial, on the ground that the verdict was against the weight of the evidence. The plaintiff seeks to review this action, and insists that this court should confine itself to the ground on which the court below predicated its action. It is. insisted *contra* that errors other than those relating to the special plea, intervened, upon which the court might well have rested its decision; and that this being true, the action of the court in granting a new trial should be affirmed, regardless of the reason assigned for it; but in the view we take of the case it is unnecessary to determine the question or to consider any ground other than those upon which the court below predicated its action.

Among the guaranteed rights of property is the right to contract; and this includes the persons with whom one may contract, as fully as the property which may be its subject-matter. The fact that one is associated with another as a partner does not, as respects third persons, restrict his right to contract individually, and so to contract as to exclude all others, even his co-partner, from participation. These are truisms, but it may not be improper to refer to them. The leading case announcing this principle is *Lucas et al. v. De la Cour*, 1 Maule & Selwyn, 250, which was an action brought by the plaintiffs as partners, and the evidence showed that the contract was made with only one of them in his individual capacity, who at the time declared the subject-matter of the contract was his property. LORD ELLENBOROUGH, C. J., said: "It struck me at the trial, that without considering this as evidence that the property belonged to Moravia alone, yet if one partner makes a contract in his individual capacity, and the other partners are willing to take the benefit of it, they must be content to do so according to the mode in which the contract was made."

In *Humble v. Hunter*, 12 A. & E. 310, which was an action of assumpsit on a charter-party executed, not by plaintiff, but by a third person who, in the contract, described himself as owner of the ship, held, that evidence was not admissible to show that such person contracted merely as the plaintiff's agent. In the opin-

ions which were delivered, there being four of them,
LORD DENMAN, C. J., in part said: "We were rather in-
clined at first to think that this case came within the doc-
trine that a principal may come in and take the benefit
of a contract made by his agent. But that doctrine
cannot be applied where the agent contracts as princi-
pal; and he has done so here by describing himself as
'owner' of the ship." PATTESON, J., said: "The question
in this case turns upon the form of the contract. If
the contract had been made in the son's name merely,
without more, it might have been shown that he was
agent only, and that the plaintiff was the principal.
But, as the document itself represents that the son con-
tracted as 'owner,' *Lucas v. De la Cour* applies.
There the partner who made the contract represented
that the property which was the subject of it belonged
to him alone. The plaintiff here must be taken to have
allowed her son to contract in this form, and must be
bound by his act. In *Robson v. Drummond*, 2 B. &
Ad. 303, where Sharpe, as coachmaker, with whom
Robson was a dormant partner, had agreed to furnish
the defendant with a carriage for five years, at a certain
yearly sum, and had retired from the business, and as-
signed all his interest in it to C. before the end of the
first three years, it was held that an action could not be
maintained by the two partners against the defendant,
who returned the carriage, and refused to make the last
two yearly payments. In this case I was at first in the
plaintiff's favour on account of the general principle
referred to by my Lord, but the form of the contract
takes the case out of that principle." WIGHTMAN, J.,
said: "I thought at the trial that this case was gov-
erned by *Skinner v. Stocks*, 4 B. & Ald. 437. But neither
in that nor in any case of the kind did the contracting
party give himself any special description, or make any
assertion of title to the subject-matter of the contract.
Here the plaintiff describes himself expressly as 'owner'
of the subject-matter. This brings the case within the
principle of *Lucas v. De La Cour*, and the American au-
thorities cited." LORD DENMAN, C. J., again said:
"*Robson v. Drummond*, 2 B. & Ad. 303, which my brother
Patteson has cited, seems the same, in principle, with

the present case. You have a right to the benefit you contemplate from the character, credit, and substance of the party with whom you contract."

In *Boston Ice Co. v. Potter*, 123 Mass. 28, A. who bought ice of B. ceased to take it on account of dissatisfaction with B. and contracted for ice with C. Subsequently B. bought C.'s business and delivered ice to A. without notifying him of his purchase until after the delivery and consumption of the ice. Held, that B. could not maintain an action for the price of the ice against A. The court said: "A party has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. It may be of importance to him who performs the contract, as when he contracts with another to paint a picture, or write a book, or furnish articles of a particular kind, or when he relied upon the character or qualities of an individual, or has, as in this case, reasons why he does not wish to deal with a particular party. In all these cases, as he may contract with whom he pleases, the sufficiency of his reasons for so doing cannot be inquired into."

In the case of *Graves and Barnewall v. Boston Marine Insurance Company*, 2 Cranch, 419, a bill was filed the object of which was to have an alleged mistake, in a policy of insurance, corrected, and relief given thereon. The material words in the policy are: "Do cause John Boonen Graves to be assured, lost or not lost, ten thousand dollars, on property on board the ship Northern Liberties, as property may appear, at and from Teneriffe to Vera Cruz." The loss was proved. The bill alleged that the property belonged to the firm of Graves & Barnewall, of which the complainant, Graves, was a member; that Graves intended to effect insurance on the joint interest, and that this was known to the respondents. That previous to the date of the policy it was usual to insert in marine policies a clause to the effect that the insurance was for the benefit of all concerned, and that the respondents had made change in this usage without making it known to the agents employed to effect the insurance, and they and

the complainants did not know of this omission until after the loss. The answer denied all mistake and all the facts relied on as evidence thereof, and especially the averments as to a change in the form of the policy. The district court, upon final hearing, dismissed the bill. The court, speaking through MARSHALL, C. J., held that the policy was a contract with Graves as an individual, and there was no mistake. Says he: "If a suit at law had been brought on this policy, it would only have been brought in the name of Graves, and he must have averred property on board the vessel; * * * · and as the remedy of the plaintiff, Graves, on the policy, to the extent of his interest is complete at law, the decree of the circuit court dismissing his bill must be affirmed."

The principles announced in these cases are supported in *Schmaltz v. Avery*, 16 A. & E. Q. B. 655; *Darrow v. Produce Co.*, 57 Fed. Rep. 463; *Burwitz v. Jeffers*, 103 Mich. 512; *Winchester v. Howard*, 97 Mass. 303; *Lucas v. Southern Railway Co.*, 122 Ala. 529; 25 So. Rep. 219; George on Partnership, 367, and authorities cited in note; 2 Bates on Partnership, § 1020.

The authorities relied upon by appellant and cited in brief, are not opposed to the principles announced in these cases. In the cases relied upon by him the contract contained no term descriptive of the capacity in which the plaintiff contracted or no statement as to whether he was being contracted with as a partner or as an individual. Indeed, this very right and the exercise of it may be of the very essence of the contract.

When contracts other than for personal services involving trust and confidence, or those which, from any other cause do not survive, are ended by the death of one of the parties, the law in the absence of special provisions to the contrary, regulates the right of succession. In case of contracts to which a partnership is a party, the legal right to execute or close it, vests in the surviving partner—the representative of the partners, for the purpose of winding up the partnership. But as we have said, there exists no inhibition upon the right of the contracting parties to provide the succession in case of death, and where such

provision is made, it becomes, itself, the law of the contract. It requires no stretch of the imagination to see, that it may be of the utmost importance in the making of contracts of the character of the ones under consideration, to provide for a limitation as to time, by way of regulating the succession of its ownership, in which it may be in force. It is not at all improbable that the defendant would have been unwilling to have undertaken the obligations imposed, incapable of being varied to meet the conditions that might arise, except by mutual consent, to last for an unlimited period of time, by entering into a covenant, which not only bound it, but all persons who might become the owners of the railroad. Here it would seem such provision was made—not only once, but twice. First, we have every indication, by the use of the words "as owner" and of the personal and singular pronouns, "he" and "his" and "him" and "me" designating the party of the first part, D. F. Sullivan, that he was dealing for himself and not for a partnership. It may be these words would lose their significance, if from other portions of the contract there were terms which might apply as well to a partnership, or if the contract appeared to have been drawn by an illiterate person. But the reading of these contracts dispels the latter idea; and as to the former subsequent provisions leaves but little room to doubt the words were used advisedly as designating and describing an individual, as distinguished from a partnership. It discloses that provision for succession in the event of D. F. Sullivan's death was considered and agreed upon; for the fourth article, as we have seen, contained the following term: "The word 'assigns' above used in connection with the party of the first part, is hereby limited to his legal representatives in case of his death," etc. In the subsequtnt agreement between the same parties, already referred to, we find great caution exercised to have it appear that the word "assigns" was to be construed as had already been stated in said article four of the first contract. It will be noted that it is not only provided that the succession shall enure to his "legal representatives," but that it shall be "limited" to such representatives—a des-

ignation of the successor in interest and a negation of right in any other person. The term "legal representative" is one having a well defined legal meaning; its "primary meaning" being "executors or administrators." Bouv. Law Dic. 170; 2 Woerner on Admin. 906, bottom page 990; *Watson v. Colburn*, 99 Mass. 342; *Cox v. Curwen*, 118 Mass. 108; *Halsey v. Patterson*, 37 N. J. Eq. 445; *Tarrant v. Backus*, 63 Conn. 277; *Briggs v. Walker*, 171 U. S. 471; *Bynum v. Railroad Co.*, 100 Ala. 311. They must be presumed to have been so used and not to apply to a surviving partner. This primary meaning would of course yield to a context which clearly showed a different meaning was intended; but here, the context supports the primary meaning. As the duty of construing written contracts devolves upon the court, we feel no hesitancy in holding, that this contract, on its face, is one solely with D. F. Sullivan as an individual and after his death, was limited to his executor or administrator; that no person could assert an interest under it as surviving partner.

But it is insisted by appellant, and seems to be conceded by the other side, that the term was one which the parties could change or alter by subsequent conduct, without express agreement. The theory upon which this insistence is predicated is upon the principal of estoppel, and the remaining portion of this opinion will be devoted to a discussion of that question, without reference to its soundness. The complaint, as stated above, avers that in the lifetime of D. F. Sullivan, this was done, in that it was known to the defendant corporation that plaintiff, Martin H. Sullivan, was a partner, and that his rights under the contract as such were recognized by the defendant before the death of D. F. Sullivan, and that it continued to recognize his interest and rights as such after his death. Having made this allegation, the plaintiff must, on issue joined, have proved the facts as therein alleged. The burden was upon him to prove not only the existence of the alleged partnership, and that the defendant knew the fact, but that knowing it, the defendant in the lifetime of D. F. Sullivan, after the making of the contracts, recognized the rights of the plaintiff as a partner in the contract as also after his death.

It would serve no useful purpose to discuss the evidence introduced upon the trial in detail. In respect of the alleged *recognition* of plaintiff as a partner, no evidence was competent except of occurrences subsequent to the making of the contract; since as we have seen, the contract was not made with the partnership but with D. F. Sullivan individually. The change or alteration of the term, must, of course, have resulted from subsequent action. The entire property claimed to be partnership property was in the name of D. F. Sullivan at his death, and he left a will in which he devised a large amout of it to the plaintiff who was named in and qualified as executor under this will, and executed it for more than six years. This, notwithstanding the will was afterwards set aside in a judicial proceeding upon a consent decree, was an admission by the platintiff that the property devised belonged to D. F. Sullivan individually. Moreover, the plaintiff revived a suit brought by D. F. Sullivan in his lifetime in the name of himself and the widow of D. F., as his executors and joined the children of D. F. as his heirs at law. This suit was an action of ejectment brought against the defendant corporation to recover one of the railroads now claimed to have been partnership property.

Some evidence was adduced of oral declarations of D. F. Sullivan—some made long prior and others long subsequent to the date of the contract—to the effect that the plaintiff was his partner. The proof is positive and undisputed, however, that no such declarations accompanied the execution of the contracts. On the contrary, D. F. Sullivan declared orally, as well as in the contracts themselves, that he was sole owner of the property. Nor was one of the declarations that the plaintiff was his partner traced directly to the knowledge of the defendant. For the purpose of fastening knowledge upon the defendant of the existence of the alleged partnership, there was evidence introduced by plaintiff tending to show that its existence was known in Pensacola and along the lines of the railroads referred to in the contracts. If it be conceded that the fact of its existence after the making of these

contracts was sufficiently notorious as to carry a presumption that it was known to the agents or employes of the defendant in those localities, we may remark that the defendant is not shown to have had an agent there, whose kowledge would be the knowledge of the defendant company.

These contracts were corporate acts of large importance, and changes or alterations were wholly without the scope of the duties of an agent or employe, made under the corporate seal of the corporation by authority of its board of directors, and contained covenants running with the land as shown by the deed made in pursuance to their provisions. "It is not within the general scope of the authority of an agent of a corporation to alter, vary or enlarge contracts made by the corporation under its corporate seal."—*Boynton v. Lynn Gas Light Co.*, 124 Mass. 197, 204; Cook on Stockholders, § 719.

In *Lyndon Mill Co. v. The Lyndon Literary & Biblical Institution*, 63 Vt. 581, it is held, in the absence of some delegation of authority express or implied the president of a corporation can no more bind it than any other individual trustee, and that his authority to bind the corporation will not be presumed. This principle was recognized and enforced in *Sampson v. Fox*, 104 Ala. 62.

The change or alteration in these contracts sought to be enforced do not involve the waiver of a condition subsequent made for the benefit of the defendant, but involve, in a measure, an alteration of an express covenant contained not only in the contracts themselves but in the deed executed by D. F. Sullivan to defendant conveying the railroad. Manifestly by the very terms of the contracts these covenants can be assigned and enforced by the assignee and against a purchaser of the property of the defendant.—*Gilmer v. M. & M. R. R. Co.*, 79 Ala. 569. This is not true as to a condition subsequent.—*McMahon v. Williams*, 79 Ala. 288. See also note to *Cross v. Carson*, 42 Am. Dec. 742.

The evidence upon which the plantiff relies as tracing knowledge of the existence of a partnership and a

recognition by it of the partnership in the lifetime of
D. F. Sullivan, is a letter written by M. H. Sullivan to
one Saltmarsh, a division superintendent of one of the
divisions belonging to the defendant. It is only nec-
essary to say of the contents of this letter that it dis-
closes no claim by Martin H. as a partner; nor is there
anything in it indicating an assertion by him of any in-
terest whatever in the contract. A letter signed by any
other agent or employe of D. F. Sullivan could as well
be made the predicate of a claim of interest. Further-
more, there was nothing to indicate any precise relation
and it is evident that Saltmarsh did not construe it as
coming from one acting in his own right, since the re-
ply was addressed to Martin H. Sullivan. Besides, this
employe is shown affirmatively not to have had any
knowledge of the claim of Martin H. that he was a
partner, or any declaration of D. F. to the effect that
Martin H. was his partner. But independent of these
considerations, it appears from Saltmarsh's testimony,
and there is not an adverse inference to the contrary,
that he was without authority to change the provisions of
the contracts—that his authority extended only to the
operation of the road of which he was superintendent.
*Stanley v. Sheffield Land Co.*, 83 Ala. 260. As we read
the evidence, there is none whatever to show that the de-
fendant, in the lifetime of D. F., recognized the rights of
Martin H. as a partner. This the plaintiff must have
shown, in order to sustain a necessary averment of his
complaint—made necessary by the fact that the con-
tracts, as we have shown, on their face, exclude the in-
terest of a partner in the lifetime of D. F. and of a sur-
viving partner after his death. There having been no
recognition of the alleged partnership during the life-
time of D. F., it could avail the plaintiff nothing if he
had proved such recognition after his death, since D.
F.'s rights could not be legally affected by said change,
if it could have been made by subsequent conduct. Both
are alleged, and both must be proved.

After the death of D. F. the defendant transported
lumber and logs, for account of plaintiff, rendering the
bill to him individually. It is insisted by defendant

that this was under a new written contract variant in its terms from that formerly in existence; and that it was under this latter contract that it transported the lumber and logs and not under the provisions of the contracts sued upon; while it is contended by the plaintiff that whatever differences existed, were by way of modification of the old and were made in the lifetime of D. F. Sullivan. Assuming that it was the same contract, the plaintiff must prove his averments that his rights under it as surviving partner, were recognized by the defendant in manner and form as laid. It is insisted that this has been shown by the correspondence in which M. H. sometimes styling himself "surviving partner of D. H. Sullivan in liquidation," at other times "surviving partner and successor to D. F. Sullivan." In order to sustain this insistence, the principle is invoked that where one deals with another without questioning the relation in which he assumes to act, he cannot be heard afterwards to deny that relation. It is quite clear that the party alleged to be estopped must have conceded the relation to exist—had admitted and confessed the relation. Another element must also appear—that the admission induced the party invoking the estoppel to have changed or altered his position to his detriment. That the admission was so acted upon as that the party to whom it was made, would be injured by a denial of the status; in other words, that he has acted on the assumption, superinduced by the conduct of the other party, to his prejudice. The plaintiff was one of the executors of the last will and testament of D. F. and as such had the right as his "assigns" to have the contract carried out, and as such may be said to be his successor. He was claiming at the same time to be a surviving partner. The contracts were performed by the defendant in the same way as they had been carried out with D. F. Sullivan. It is not pretended that the defendant by any act or representation induced the plaintiff to assume the relation of surviving partner, if he ever assumed any, or in any manner influenced him to assume the execution of the contract for the executors of D. F. as his surviving partner. Nor that it, in anywise, induced him

to cause letters testamentary to be issued to himself as one of the executors under the will of his deceased brother. He was in possession of a knowledge of all the facts; more fully informed of his true relation to his deceased brother and the interest he owned in the property, which he claims belonged to a partnership of which he was a member, than it was possible for the defendant to have ever been. Having a full knowledge of the true relationship which he bore to the property the legal title to which was in the name of D. F. at his death, it would seem that the duty rested upon him to unequivocally fix his own status. Certainly the defendant could not be compelled to fix it for him, and indeed could not have done so with any binding efficacy upon him, and it would seem its agent's declination to do so was put in the form of addressing him in no special relation but as "Mr. M. H. Sullivan."

If it can be said that his assumption of the relation of surviving partner, if as a matter of fact he ever assumed to occupy such relation, as evinced by the words after his signature of "surviving partner of D. F. Sullivan in liquidation," was such notice to the agent of defendant to whom they were addressed, as demanded action on the part of the agent, it may be as forcibly answered that the agent's replies put him upon notice that the relation was not conceded; that he was being dealt with as his interest might appear. The fact that when the agent was addressed by the plaintiff claiming a special relation, he replied generally, cannot, certainly, be construed into an admission of the special relation. Especially is this true when it is made to appear that he wrote other letters covering the same period of time to the same agent signed by him "surviving partner and successor to D. F. Sullivan." As executor of of the last will and testament, as we have said, he was the successor of D. F. under the very terms of the contract. The reply to these letters by the agent addressing him personally, in no special relation, cannot by any sort of construction be said to have conceded his rights as surviving partner.

One of the essential elements of an estoppel is certainty; and it cannot be said that it clearly appears

that the plaintiff had the right and acted upon it to construe the replies to his letters into an admission of his claim as surviving partner. He had not unequivocally fixed his status by his own letters. The matter of his relation to the estate of D. F. Sullivan seems to have been a doubtful question with him as shown by them. He seems to have avoided, as shown by the correspondence, and his conduct, committing himself to an unqualified admission in what capacity he desired the contract to be performed by the defendant's agents. If the answers to his letters did not convey a suggestion of a repudiation of his alleged claim as surviving partner, they certainly were sufficient to disclose a refusal on the part of the agent who wrote them to commit himself to an assumption of the responsibility of determining whether, in the first instance, plaintiff had the right to proceed under the contract as executor or as surviving partner.—*Miller v. Hampton,* 37 Ala. 347; 11 Am. & Eng. Ency. Law (2d ed.), 424 and note 2.

Another essential of an estoppel is mutuality. Until the plaintiff unequivocally fixed his own status with reference to the contract, that is, until he had by his conduct, declarations or admissions so placed himself in the position of asserting his rights as surviving partner, and not otherwise, as that he was bound in that relation and in no other, there can be no estoppel as against the agents with whom he was dealing, much less against the defendant, to dispute his right as such. This he did not do. On the contrary, he left the question of his status, as successor, open and undetermined. In one batch of letters written, he claimed to be asserting his rights as surviving partner. In the next, he asserted his rights as "surviving partner and successor to D. F. Sullivan." Whether the succession was claimed in the latter as surviving partner or as executor or as successor of D. F. Sullivan in the timber and lumber business after his (D. F.'s) retirement was certainly not definitely and conclusively disclosed by this language. The agent whose duty it was to perform for the defendant the obligations of the contract would certainly not have been authorized to have refused to do

so, upon the ground of an asserted claim by the plaintiff to have it performed as surviving partner. As executor he was entitled to have these contracts performed according to their terms. The agent, knowing this, could well have recognized his rights in that capacity and complied with his demands without committing him to a recognition of his alleged claim.

There was an absolute failure on the part of the plaintiff to bring his case, for the several reasons pointed out, within the application of the principle of estoppel invoked by him.—1 Brick. Dig. 796, §§ 2, 5; *Hunley v. Hunley*, 15 Ala. 91, 105; *Pounds v. Richards*, 21 Ala. 424; 2 Pom. Eq. Jur., § 805.

However, if it be conceded that the evidence establishes the existence of a partnership and a recognition of the plaintiff's rights by the agents of the defendant after the execution of the contracts, in the absence of evidence of the agent's authority to bind the defendant, here is a failure of proof of the recognition as alleged in the complaint.—Cook on Stockholders, §§ 716-720 and notes. It cannot be held that there has been a ratification by defendant of the unauthorized acts of its agents, conceding, for the sake of argument, they are shown, upon any phase of the case as made by the evidence.—*Dabney v. Stevens*, 40 Howard's Pr. 341; *Tracy v. The Guthrie Co. Ag. So.*, 47 Ia. 27; *Wheeler v. McGuire*, 86 Ala. 398. In the opinion in the case of *Dabney v. Stevens*, there is an elaborate discussion of many of the principles invoked in the queston under consideration. Upon what theory the plaintiff could contend for a ratification and in the same breath insist upon breaches of the contracts, as changed or altered by the conduct of the agents, we are quite unable to see. From his standpoint, the acts of the agents consisted in its breach as well as a recognition of his rights as surviving partner to demand performance. If there was a ratification of the one, there was of necessity a ratification of the other. If the contract was changed, as changed it is an entirety. There cannot well be a repudiation of it and at the same time a recognition of it. Or to state the proposition in another form, there cannot be a rati-

fication of an act done with reference to it, involving and constituting a part of the same transaction in which the contract is repudiated. The acts of recognition and breaches by the agents spring out of one transaction—the furnishing of cars at the request of the plaintiff for the transportation of logs and lumber and the collection of the charges for the service.

Affirmed.